The STATE of Ohio, Appellee,

v.

McDANIEL, Appellant.

[Cite as *State v. McDaniel* (2001), 141 Ohio App.3d 487.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 2000–CA–55.

Decided Feb. 16, 2001.

488

*William F. Schenck,* Greene County Prosecuting Attorney, and *Robert K. Hendrix,* Assistant Prosecuting Attorney, for appellee.

*Harry R. Reinhart,* for appellant.

FAIN, Judge.

Defendant-appellant Ryan Roger McDaniel appeals from his conviction and sentence, following a guilty plea, for involuntary manslaughter. McDaniel contends that the trial court erred by imposing the maximum sentence for this offense because the trial court erroneously found that it was the worst form of the offense, a finding required by R.C. 2929.14(C) as a predicate for the imposition of a maximum sentence, based upon uncharged conduct. The state argues that the facts found by the trial court were shown by the report of the autopsy of the victim to have been a contributing cause of her death. Therefore, the state argues, the trial court properly considered these facts in determining that McDaniel had committed the worst form of the offense.

We conclude that the trial court could not properly base its finding that McDaniel had committed the worst form of the offense upon facts that did not comprise the offense as it was charged and as it was recited to McDaniel at the

time he pled guilty. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for resentencing.

## I

McDaniel was charged by information with the involuntary manslaughter of April A. Buell. The information charged that McDaniel:

"[On] the 10th day of January, 2000 at the County of Greene, aforesaid, did, cause the death of another, to wit:

"April A. Buell, as approximate result of the offender's committing or attempting to commit a misdemeanor of the first degree, to wit: Permitting Drug Abuse a violation of R.C. 2925.13(B), contrary to and in violation of Section 2903.04(B) of the Ohio Revised Code and against the peace and dignity of the State of Ohio."

R.C. 2925.13(B) provides, in its entirety, as follows:

"No person who is the owner, lessee or occupant, or who has custody, control, or supervision, of premises or real estate, including vacant land, shall knowingly permit the premises or real estate, including vacant land, to be used for the commission of a felony drug abuse offense by another person."

On March 29, 2000, McDaniel tendered a plea of guilty, in open court. The trial court, after having ascertained McDaniel's mental competence, and after having advised McDaniel of potential penalties and the rights he would be waiving by pleading guilty, directed the prosecutor to read into the record the facts and allegations upon which the charge was based:

"THE COURT: I want you to listen carefully as the prosecutor reads for the record the facts and allegations upon which they have brought this charge and then I'm going to have just several more questions for you. So, please give your attention to Mr. Schenck.

"MR. SCHENCK [the Prosecutor]: May it please the Court, Your Honor, counsel. On or about the 10th day of January of the year 2000 Beavercreek emergency officers and police ultimately responded to a 911 call in Beavercreek that had in fact been initiated by the Defendant in this cause. The call caused a response to 9030 Oakland Drive. Wait a minute. I'm sorry about that. I think that is right. Have I got that right. 903 Oakland Drive in Beavercreek at approximately 3:17 or 3:18. Upon arrival at this location in Greene County Ohio, the discovery was that of a 25 year old female who had previously been living, for purposes of stating the facts, and was determined in fact at that time to have expired. Upon confrontation with the Defendant, the Defendant indicated that on the evening before, or the 9th of January, he had been with the deceased person, one April Beull [*sic*]. And they had engaged in the use off [*sic*]

consumption of several substances, including [X]anax, cocaine, marijuana, and [S]oma. He indicated to the officers that he and the deceased had fallen asleep around 12:30 on the 10th of January. Before they had gone to bed he, the Defendant, indicated that he helped or placed April Beull [*sic*] in a cold shower and they went to bed. And he, the Defendant, said he woke up thereafter, but was unable to awake the deceased. He shook her and again tried to wake her but noticed she was not breathing, thus he called 911, which led, of course, to the arrival of paramedics. She was indeed pronounced dead at 3:22 A.M. by a lieutenant in the Beavercreek fire squad who was a paramedic. This led to an investigation by the Beavercreek Police Officers who caused an autopsy to be performed at the request of the Greene County Coroner. Unfortunately, the autopsy did in fact result in certain positive findings, many for drugs, and the autopsy did in fact confirm, cooberate [*sic,* presumably 'corroborate'], what the Defendant had indicated.

"It is the position of the prosecution and the State, that this Defendant permitted drug abuse in his home, and while the intoxicants or substances may have in fact been voluntarily ingested, in fact we have no reason to believe otherwise.

"By virtue of permitting drug abuse and engaging in this conduct, as the coroner found, cause of death was or at least part of the cause of death in this instance was as the result of drug ingestion, thus the information charging the crime of manslaughter, a felony of the third degree. Thank you.

"THE COURT: You're welcome, sir. Mr. McDaniels, do you understand the facts as read upon the record.

"THE DEFENDANT: Yes, sir.

"THE COURT: Are those the—well, is there anything about those facts that is in some way unclear to you.

"THE DEFENDANT: No, sir.

"THE COURT: Is that the set of facts that you wish to enter a plea of guilty to.

"THE DEFENDANT: Yes, sir.

"THE COURT: Is that because those facts are true.

"THE DEFENDANT: Yes, sir.

"THE COURT: How do you wish to plead to the charge.

"THE DEFENDANT: Guilty."

Thereafter, the trial court accepted McDaniel's plea and set the matter for sentencing at a later date. At sentencing, the trial court imposed the maximum

sentence, being five years' incarceration. The trial court found "for the reasons stated here and upon the record" that, pursuant to R.C. 2929.14, McDaniel had committed the worst form of the offense.

Thereafter, McDaniel moved for reconsideration of the sentence. The trial court entered an order overruling the motion.[1] In the entry, the trial court made it clear that it was basing its conclusion that McDaniel had committed the worst form of the offense upon the observation, in the autopsy report, that the victim had a total of forty bruises and contusions or abrasions over her body, which the trial court implicitedly attributed to McDaniel's having beaten the victim. The autopsy report is attached to a copy of the state's brief. Although the trial court did not so note, we note that the autopsy report concludes that the injuries to which the trial court refers, some of which may have been sustained on one or more earlier occasions, were a contributing cause of death. The principal cause of death was listed as "Multiple Drug Intoxication (Xanax, Cocaine, Somax [*sic*, Soma])."

From his conviction and sentence, McDaniel appeals.

## II

McDaniel's sole assignment of error is as follows:

"The court erred in finding the facts of this case to be the most serious example of the offense of involuntary manslaughter, in failing to find any mitigation factors, and by imposing the maximum sentence under the statute."

As the state acknowledges, in order to impose the maximum sentence of five years, the trial court was required to find that McDaniel had committed the worst form of the offense. The state argues that the trial court correctly based its finding that McDaniel had committed the worst form of the offense upon the evidence supporting an inference that McDaniel had severely beaten his victim.

If the trial court could properly base its finding that McDaniel committed the worst form of the offense upon the evidence of the beatings, then we would agree with the state that the trial court would have been within its discretion in so finding. However, we agree with McDaniel that the trial court could not properly base a finding that he had committed the worst form of the offense upon facts unrelated to the offense as it was charged, and as it was recited to McDaniel at the time that he entered his guilty plea.

---

1. In his brief, McDaniel notes that although the trial court did not originally provide a sufficient explanation of its reason for imposing the maximum sentence, its subsequent decision and entry overruling his motion to reconsider does set forth its reason in sufficient detail to permit meaningful appellate review.

■ In general, we have no doubt that a trial court may consider, in connection with exercising its discretion what sentence to impose, a defendant's uncharged acts of cruelty toward his victim. R.C. 2929.12(A) and 2929.11; however, to impose the maximum term of imprisonment for a felony, a trial court must, pursuant to R.C. 2929.14(C), find that the offender is among the class of "offenders who committed the worst form of the offense," "offenders who pose the greatest likelihood of committing future crimes," "certain major drug offenders," or "certain repeat violent offenders." In the case before us, the trial court based its imposition of the maximum sentence upon its finding that McDaniel had committed the worst form of the offense. The "offense" is the offense for which the sentence is imposed. Obviously, to impose a sentence for an offense requires either that the defendant be convicted of that offense, or that his plea of guilty to that offense has been tendered and accepted.

The offense with which McDaniel was charged, by information, was the involuntary manslaughter of April Buell by his having caused her death as a result of his commission of the misdemeanor offense of permitting drug abuse. That is the offense with which he was charged, and that is the offense to which he pled guilty. He was not charged with having caused April Buell's death by severely beating her, and he did not plead guilty to that offense.

As the trial court notes in the entry overruling McDaniels's motion to reconsider, if the offense the trial court was considering was merely the offense of causing April Buell's death by permitting her, while on McDaniel's premises, to consume dangerous drugs, the trial court might not have concluded that it was the worst form of the offense of involuntary manslaughter. Rather, the trial court based its conclusion that it was the worst form of the offense of involuntary manslaughter upon the evidence that McDaniel beat Buell severely.

In our view, a trial court may not properly base a finding that a defendant has committed the worst form of the offense, for purposes of R.C. 2929.14(C), upon facts and circumstances that do not comprise a part of the conduct involved in the charged offense. Here, the offense with which McDaniel was charged did not include any beatings that he may have inflicted upon April Buell. Perhaps he should have been charged with an offense that included the beatings. Of course, if he had been so charged, the state would have borne the burden of proof thereof, beyond a reasonable doubt.

We hasten to distinguish the case before us from a case in which facts and circumstances composing the offense are elaborated upon in a presentence investigation report, or otherwise, at sentencing. If, for example, there were evidence before the trial court, at sentencing, that April Buell had not wanted to ingest drugs but that McDaniel had strongly encouraged her to do so, based upon his position as her host, that would be a fact, merely elaborative of the offense as

charged, that the trial court could properly take into consideration in determining whether McDaniel's involuntary manslaughter offense was the worst form of that offense. However, where facts or circumstances are unrelated to the offense as charged, even if they could have been made a part of the charge, they are not part of the offense for the purpose of determining whether the charged offense, of which the defendant has been convicted, or to which he has pled guilty, is the worst form of the offense.

Because we conclude that the trial court erroneously based its finding that McDaniel had committed the worst form of the offense upon the beatings suggested by the autopsy report, we conclude that McDaniel's assignment of error is well taken, that the judgment of the trial court must be reversed, and that this cause must be remanded for resentencing. At the resentencing hearing, if the trial court should conclude that McDaniel did beat April Buell repeatedly, severely, or both, as suggested by the autopsy report, that is a circumstance that the trial court may properly take into consideration in determining what sentence to impose. However, that conclusion may not support the finding required by R.C. 2929.14(C) for the imposition of the maximum sentence, that McDaniel committed the worst form of the offense.

McDaniel also argues in his brief that the trial court failed to consider circumstances in mitigation of the sentence. From our reading of the trial court's entry and the ruling overruling the motion for reconsideration, it appears that the trial court did consider McDaniel's arguments in mitigation but rejected their factual predicate. In any event, we conclude that it is unnecessary to resolve this issue at this time, since our remand of this cause will require a resentencing, at which McDaniel may again argue mitigating circumstances.

McDaniel's sole assignment of error is sustained.

### III

McDaniel's sole assignment of error having been sustained, we reverse the judgment of the trial court and remand this cause for resentencing.

*Judgment reversed*
*and cause remanded.*

BROGAN and GRADY, JJ., concur.